HANNA, APPELLANT, *v*. WAGNER, APPELLEE.

(No, 4-73-2—Decided May 30, 1973.)

154

*Messrs. Ryan & Borland,* for appellant.
*Messrs. Weaner, Hutchinson & Zimmerman,* for appellee.

GUERNSEY, P. J. This action originated in the Court of Common Pleas of Defiance County. The complaint alleged negligence of defendant in that she "made a left turn into the motor vehicle operated by the plaintiff," and the answer alleged the contributory negligence of plaintiff "in failure to use ordinary care to avoid said collision at said time and place."

The collision took place during daylight hours in the eastbound lanes of East Second Street in the City of Defiance, the apparent points of first impact being the left front portion of plaintiff's pickup truck and the right front portion of defendant's car, and occurring near the entrance to a private driveway leading from the south side of Second Street to the parking lot of a doctor's office and located approximately one hundred yards east of the intersection of Biede Place with Second Street, a T-intersection controlled by the usual traffic light. Plaintiff had been traveling east on his side of the centerline. Defendant had been traveling west and desiring to turn into the private driveway had stopped on her side of the centerline to permit another driver to move from the entrance to the private driveway, and had then proceeded to turn left at which time the vehicles of plaintiff and defendant collided. The prima facie speed limit in the area involved is assumed to be 35 miles per hour and, in any event, is at least 25 miles per hour.

Plaintiff testified that as he proceeded east he came to a red light at the intersection, slowed to approximately three to five miles per hour, shifted to first gear, then shifted to second gear when the light turned green, got about a car length and a half through the light, saw the defendant's car start to turn, blew his horn, saw it wasn't going to stop, attempted evasive action, collided, and was

going about 20 to 22 miles an hour upon collision. Plaintiff's witness Johnson testified that he was traveling four to five car lengths behind plaintiff, observed plaintiff slow for the red light, slowed himself for the same red light, saw the light change, proceeded through same at approximately 15 miles an hour, and that in his opinion plaintiff was traveling 15 to 20 miles an hour at the time of collision. Plaintiff's witness McNeely testified that his car was the second eastbound vehicle behind plaintiff's, that the cars in front of him slowed down and he downshifted to second gear, was traveling approximately 15 miles per hour, the light changed, the traffic started moving, he went about a hundred feet or so at around 20 to 25 miles per hour, saw defendant's car turn in front of plaintiff's pickup truck, and stepped on his emergency brake to avoid hitting the car traveling behind plaintiff.

In the light of the issues before us defendant's principal and critical testimony was as follows:

(Transcript, p. 210)

"Q. Now will you tell me in chronological order the series of events that happened as you were going to Dr. Lenhart's office?

"A. Well I come up there and I seen the light was red and I seen a woman pulling out of the parking lot and I was waiting until she got clear of the driveway so I could pull in and I just started across the center line or whatever you call it, and I was hit.

"* * *

"Q. Now immediately before you started to make your turn, did you make any further observations?

"A. I glanced up to see if the light had changed and it was still red."

(Transcript, p. 104)

"Q. And you say you looked toward the light, is that correct?

"A. I looked at the light and it was red.

"* * *

"Q. Did you notice any cars at the light?

"A. No, there wasn't nobody coming. They might have

been coming up to the light, but the light was red when I last glanced at it. It was red.

"Q. Now when was the first time that you saw—well did you see the plaintiff before the accident?

"A. No, I sure didn't."

Defendant also offered as a witness one Cruz who testified as to traveling east on Second Street, that plaintiff passed him at in excess of 45 miles per hour at a point some distance west of the intersection in question, and that the plaintiff continued to pull away from him. He then testified (with emphasis added), transcript p. 205:

"Q. And what did you observe from that point on?

"A. Well, at that time I told my wife, 'well this guy is going pretty fast. He probably, if he don't slow down, he will probably run into somebody.' And you know, my wife was to my right, *so I was looking over while I was talking to her,* when I glanced up I seen the truck hit the telephone pole.

"Q. How far were you from the truck when you saw it hit the telephone pole?

"A. Well I'd say about a hundred yards.

"Q. Now what did you do at that point?

"A. Just continued on driving until I got to the light.

"Q. Now did you observe this light?

"A. *I didn't pay no attention to it.* I know it was red when I got there.

"Q. Did you have to bring your vehicle to a stop?

"A. Yes sir.

"Q. And when you pulled up to the light, the light was what directional signal?

"A. It was red for me, *but I don't know whether it had just turned* red or not. See, *I wasn't looking.* I was just looking at the accident.

"Q. All right, from the time that you looked up and saw the pick-up truck hit the utility pole until you brought your car to a halt at the traffic light, you say it was red. How long a time would have elapsed?

"A. About 15 to 20 seconds at the most."

On this state of the evidence, the plaintiff did not move

for a directed verdict, the cause went to the jury, the jury returned a verdict for the defendant upon which judgment was entered, and motion for new trial was overruled. The plaintiff has appealed asserting only that the verdict of the jury is against the manifest weight of the evidence and contrary to law.

At first blush we have here a case for the application of the two issue rule since the verdict, untested by interrogatories, is consistent with either a finding that the defendant was not negligent or that the plaintiff was negligent. However, in situations as here, the two issue rule pertains to two issues to be determined by the jury, *i. e.,* two issues of fact or mixed issues of law and fact. If the jury has no discretion to exercise on one of the issues and that issue must be decided in a certain manner as a matter of law then no doubt remains as to that issue and the existence or nonexistence of error as to the other issue may become apparent. Thus, in the fact situation here, if on the evidence it must be concluded as a matter of law that the defendant was not negligent the plaintiff could affirmatively show error in the judgment only if the error shown was in respect to the issue of contributory negligence. On the other hand if on the evidence it may not be concluded as a matter of law that the defendant was negligent the jury would have a discretion in the determination of that issue, the verdict could be a product of either the defendant's negligence or the plaintiff's contributory negligence, and the two issue rule would be applicable.

In determining whether defendant was negligent as a matter of law we may consider three statutes:

R. C. 4511.25 prescribes:

"Upon all roadways of sufficient width, a vehicle * * * shall be driven upon the right half of the roadway, except as follows:

"(A) * * * when making a left turn under the rules governing such movements;

"* * * ."

R. C. 4511.39 prescribes:

"No person shall turn a vehicle * * * from a direct

course upon a highway until such person has exercised due care to ascertain that the movement can be made with reasonable safety to other users of the highway * * * .
" * * * ."

R. C. 4511.42 prescribes:

"The operator of a vehicle * * * intending to turn to the left shall yield the right of way to any vehicle * * * approaching from the opposite direction."

The Supreme Court held in *Oechsle* v. *Hart,* 12 Ohio St. 2d 29, that R. C. 4511.25 and 4511.26 impose a mandatory duty upon the operator of a motor vehicle to drive solely upon the right half of a roadway except under certain specifically designated circumstances, and an unexcused failure to comply with this duty constitutes negligence per se. In *Spaulding* v. *Waxler,* 2 Ohio St. 2d 1, it held that an emergency which will relieve a motorist of his duty to comply with a safety statute regulating vehicular traffic must arise as the result of something over which he has no control and that a self-created emergency, one arising from his own conduct or from circumstances under his control, cannot serve as an excuse. See, also, *Zehe* v. *Falkner,* 26 Ohio St. 2d 258.

There is no claim of sudden emergency here and, in any event, there could be none excusing the defendant in the legal sense because her failure to comply with R. C. 4511.25, if there was a failure to comply, did not result from something over which she had no control. It would follow that if defendant was in violation of R. C. 4511.25 she was negligent as a matter of law. She was not in violation if she made a left turn "under the rules governing such movements." Conversely, if she did not conform to such rules she was negligent per se. Similarly, if the rules governing left turns, as applied to a certain set of facts, establish a rule of conduct as contrasted with a specific requirement to do or to omit to do a definite act, negligence as a matter of law may not exist and negligence may be established only upon a finding of fact by the jury that the rule of conduct was violated. *Heidle* v. *Baldwin,* 118 Ohio St. 375.

In this case left turns are governed by R. C. 4511.39 and R. C. 4511.42. In usual circumstances R. C. 4511.39 establishes merely a rule of conduct, *i. e.,* a standard of due care. However, in the case of *Van Jura* v. *Row,* 175 Ohio St. 41, the Supreme Court held that "a motorist about to make a left turn, who is given a signal to pass in front of a stopped vehicle going in the opposite direction, attempts to complete his left turn without exercising due care, and collides with another vehicle having a lawful right to proceed, is guilty of negligence as a matter of law." Compare *Cothey, Admx.,* v. *Jones-Lemley Trucking Co.,* 176 Ohio St. 342. There is not much dissimilarity, if any, between a motorist who relies solely upon a "signal to pass" given by another motorist and one like the defendant here who did not look for approaching vehicles and relied solely upon the existence of a red light on which she acted as if it were a signal to pass.

However, since the Supreme Court injected into its *Van Jura* decision the element of the lawful right of the other motorist to proceed we shall not rely solely on that decision in arriving at ours. Prior to 1963, R. C. 4511.42 had application only to left turns at intersections and had no application to left turns made between intersections. Both in its form before the amendment and in its amended form this statute established a specific requirement that the operator of a vehicle intending to turn to the left shall *yield the right of way* to any vehicle approaching from the opposite direction. However, R. C. 4511.01 (SS) defines "right of way" as the right of a vehicle to proceed uninterruptedly *in a lawful manner* in the direction in which it is moving in preference to another vehicle approaching from a different direction into its path. Thus, in the circumstances here the defendant was specifically required to yield the right of way if the plaintiff was proceeding in a lawful manner; otherwise, not. There was nothing in plaintiff's testimony, the testimony of his two witnesses who were following him, or the testimony of the defendant, who did not look for or even see plaintiff, to show that plaintiff was not proceeding in a lawful manner. The testimony as to

his speed showed that at, and immediately prior to the collision, he was traveling within the prima facie speed limit existing at the place in question. There was no testimony that he otherwise failed to use due care, or that he was in violation of any specific requirement of the law. The testimony of defendant's witness Cruz tended to show that plaintiff had been exceeding the speed limit before he arrived near the intersection immediately before the collision, but his testimony also shows quite specifically that he did not observe plaintiff or the traffic light from the point of time and place where plaintiff was pulling away from him after passing him until the point of time and place when he saw plaintiff's vehicle hit the telephone pole. His testimony had no probative value to show that plaintiff was speeding either through the intersection or at the point of the collision or that plaintiff (and of necessity the two vehicles behind plaintiff) had crashed the red light. Note also the Supreme Court's conclusion in *Cleveland* v. *Keah,* 157 Ohio St. 331, that where speed does not contribute to the collision loss of right of way does not result. There being no evidence of probative value to show that plaintiff was not proceeding in a lawful manner we must conclude that defendant was guilty of negligence as a matter of law in not yielding the right of way to plaintiff in accordance with the specific requirement of R. C. 4511.42. Upon the same reasoning defendant was guilty of negligence as matter of law in failing to conform to the specific requirement of R. C. 4511.25 that she drive upon the right half of the roadway, because she did not make a left turn under the specific requirement of R. C. 4511.42 governing such movement.

In that defendant testified to the effect that the only cars she saw coming in the eastbound lanes were west of the traffic light she would have us infer that at the time she started her left turn the plaintiff had not reached the traffic light, it was red for him, and he was thus not in a position where she was required to yield the right of way to him. However, in testing the evidence to determine whether defendant was guilty of negligence as a matter of law

we apply the same standards as we would in determining whether the plaintiff is entitled to judgment notwithstanding the verdict of the jury. We must construe the evidence most favorably to the defendant but in doing so we are required only to make *reasonable* inferences, *Kenny* v. *Metropolitan Life Insurance Co.*, 82 Ohio App. 51, 55. See also Civil Rule 50. Defendant testified to the effect that the last thing she did before starting to move left was to look at the traffic light. Are we then to infer that she started moving to the left the moment thereafter? Assuming that from the moment of starting to move left she traveled as slowly as an average of three miles per hour it would have taken her three seconds to move 13.2 feet, well into the area of impact. In that same three seconds, assuming that plaintiff was traveling as fast as fifty miles per hour, plaintiff would have traveled 219.99 feet, or if traveling at a lower speed would have traveled commensurately less distance. As the collision took place approximately 100 yards, or 300 feet, east of the intersection plaintiff could not, if traveling at any speed of fifty miles per hour or under, have reached the point of impact at the same time as defendant unless he was east of the intersection at the moment that defendant started moving left. If there, he had to be seen had defendant looked. No other inference is reasonable. Conversely, if plaintiff was not there at the time the defendant last looked some time, in excess of normal reaction time, had to elapse between the moment she last looked at the traffic light and the moment she started to move left. Reasonable minds could come to no other conclusion than that plaintiff was in a position requiring the defendant to yield the right of way.

We conclude from the foregoing that on the evidence before the jury it was required to find the defendant guilty of negligence as a matter of law and that the verdict and judgment may stand only if there was evidence which would support a conclusion that the plaintiff was contributorily negligent. As we have heretofore determined there was no evidence in the record which would support a finding that he was proceeding in an unlawful manner so as to

lose the right of way to the defendant. We also find no evidence to support a conclusion that after the defendant failed to yield the right of way and started her left turn the plaintiff failed to use ordinary care not to collide with defendant after becoming aware of her situation. Nor is there any other evidence to support a finding of contributory negligence on the part of the plaintiff.

We thus reach a situation where the evidence would demand a conclusion that the defendant was negligent as a matter of law and will not support a conclusion that the plaintiff was contributorily negligent. On this state of the evidence the jury should have found on the issue of liability against the defendant and in favor of the plaintiff and proceeded to assess damages and, if permissible, we should enter final judgment on the issue of liability and remand for the assessment of damages.

In *Edelstein* v. *Kidwell* (1942), 139 Ohio St. 595, the Supreme Court held that a cause could not be remanded on the issue of damages separately from the issue of liability. This decision, however, was based upon the then form of G. C. 11576, the new trial statute, which the court construed as requiring the remand of the entire cause, but at the same time recognized that statutory procedural authority could provide otherwise. Civil Rule 59, which has replaced R. C. 2321.17, which in its turn replaced G. C. 11576, and which has the same force in law as a statute, now provides:

"A new trial may be granted to all or any of the parties and *on all or part* of the issues upon any of the following grounds: * * * ." (Emphasis added.) Obviously the emphasized provision of Rule 59 is to take care of situations as here exist and to permit a remand of the issue of damages separately from the issue of liability.

We conclude that the trial court committed error prejudicial to the appellant in that the verdict and judgment are not sustained by the evidence and are thus contrary to law. The judgment is reversed and vacated and this court enters final judgment for the plaintiff and against the defendant on the issue of liability and remands the cause

to the trial court for further proceedings on the issue of damages.

*Judgment reversed and final judgment rendered*
*in part.*

COLE and MILLER, JJ., concur.